Case numbers 17-3866 and 17-3867 Planned Parenthood Cincinnati et al. v. Joseph Deters et al. Rural argument not to exceed 15 minutes per side. Hannah Wilson, for the appellant, you may proceed. Good morning, your honors, and may it please the court. Hannah Wilson, the Ohio Attorney General. I'll also be speaking this morning on behalf of the Hamilton County Prosecutor. I'd like to reserve four minutes for rebuttal. In McQueary v. Conway, this court ruled that a preliminary injunction with nothing more will seldom suffice for attorney's fees under Section 1988. The district court in this case brushed aside that instruction and awarded the full requested fees based solely on a preliminary injunction that was dissolved when a third party's independent actions mooted the underlying case. That was legal error and the court should reverse for three reasons. First, the plaintiffs are not prevailing parties because they received no court-ordered relief that endured beyond this litigation. Second, the relief that they did obtain... This litigation lasted and was held in abeyance for how long? It was not held in abeyance. It was actively litigated for... We're in year 14 now, so the complaint was filed shortly after I graduated from high school. But it was actively litigated for almost all of that time. I think it was held for a short period of months during the Hellerstadt decision at the U.S. Supreme Court. But otherwise, it lasted a very long time because the plaintiffs pursued four different claims and lost on three of them. They pursued four different claims seeking to invalidate Ohio's law, and they lost on three of them. And the preliminary injunction was issued at the very beginning of the litigation. But the point is that the relief that they did obtain was a preliminary injunction and it lasted no further than this case. There's no lasting change in the legal relationship as is required by Supreme Court precedent. Now, the second point is that this circuit has recognized that there are occasional exceptions, occasional exceptions, to the general presumption against fees in the PI context. This case, however, does not fit into one of those exceptions. And the third point is that even if the court thinks that the plaintiffs are prevailing parties, which they are not, as I'll demonstrate, it must greatly reduce their award to account for their very limited success in this matter. So I'd like to begin with the prevailing party question because I think that's how the court should resolve this case. The plaintiffs received no court-ordered relief that endured beyond this litigation, as is required by sole bucking. But they got everything they asked for. Not at all, Your Honor. They sought a total, permanent, ongoing ban of Ohio's law, and they received a partial, temporary ban. Well, for all we know, they would have gotten that if the change in the law hadn't mooted it out. There was no change in the law that mooted it out. The FDA updated the regulations. The FDA is not a party to this case. Ohio's law requires plaintiffs to follow federal labels when they prescribe the medicine that was at issue here. The plaintiffs sought a total ban on Ohio's law, and they sought permanent, ongoing relief. What they got was temporary, partial relief. And that's clear by this hypothetical. Imagine that the FDA were to change its label tomorrow and go back to the old label that required only the use up to 49 days of LMP. Planned Parenthood would have to sue Ohio again to get any relief. There is no court-ordered health exception to the enforcement of Ohio's law. And that's clear because the injunction that was in place was only in place for as long as the litigation was in place, and was dissolved when the plaintiffs voluntarily But it was based on a finding of likelihood of success on the merits, was it not? That's correct, Your Honor, but that's not sufficient under McQueary. Yes, the issue that probably strikes to make this factually interesting and perhaps different from your argument is that what was sued for was to enable the use of what the FDA and others had considered appropriate off-label use. And 12 years later, the FDA came forward and agreed with the plaintiffs' position and made the new on-label use the very same as these plaintiffs had brought the case for. So I'm struggling a little bit with the reality of this case when you say no, that there was no success because the order that was entered limited the use of this act for the entire 12-year period. And at the conclusion of that time, the very thing that these plaintiffs had brought the case for transpired. So help me understand your argument that they obtained no success over a 12-year injunction that ended in them being in exactly the place that they had requested to be when they had filed a suit. Certainly, Your Honor. The flaw in those facts is that the relief that they sought came not from the court as is required by Buchanan. It came not from us, the defendants, as was the case in McQueary where fees were denied, but it came from a third party. So Ohio was deprived of the ability to make this case like Seoul where the plaintiff won a preliminary injunction but lost on the permanent injunction. So where we have these mooting circumstances, Sixth Circuit precedent teaches that fees will rarely be available, and that's the McQueary case. And it held out that there are occasional exceptions to that rule, but this case certainly does not fit into it. They obtained no lasting change in the legal relationship with Ohio by court order. Certainly, they got what they wanted from a third party, but not with the necessary judicial imprimatur as Buchanan, Supreme Court precedent, requires. And the occasional exception that McQueary recognized was one where a preliminary injunction gives the plaintiffs all that they want, and the only thing that moved the action is court-ordered success in the passage of time. This emphatically does not fit into that example. Well, help me understand under McQueary 1, if that's your example, that's like the Saturday parade example, right? Not at all. This is very different from the Saturday parade. No, no, not here. The example that you're giving is the Saturday parade example. If that's all that McQueary 1 had required, then why did it bother to remand? Well, McQueary did note that the district court had originally relied on special circumstances to deny relief. And it said, well, it's not clear what those special circumstances that the district court thought that they were discussing were, but they can explain on remand. So that's part of what could explain the McQueary remand. I think the result in McQueary was quite clear, and you look at the second McQueary decision where this court affirmed the district court's denial of fees, and it seemed like the district court reached the obvious answer. But given that the district court judge had the ringside view of the proceedings, the court just took the judicially conservative view and gave it back to the district court to make the assessment, applying the correct standard. It strikes me as an odd argument because we've not been shy in cases where we think the law is clearly settled and there is one exemplar to which it applies in saying so. And if you had this case that is the example of McQueary 1, I don't understand why there would have been a remand to consider application if the standard that you argue for was so clearly articulated in McQueary 1. So I think the reason why is that it was not clearly settled in this circuit when the case came to the circuit in McQueary 1. So Sol reserved the question specifically that arose in McQueary and in this case. And so the court was interpreting Sol in the mooted case situation for the circuit and delivered new instructions to the district court, and in light of those new instructions, the district court did not have the benefit of those, remanded to give the district court the first crack at the apple following the correct rule of law. The bottom line, Your Honors, is if fees were denied in McQueary where the defendant itself was responsible for mooting the case and depriving the plaintiff of the ability to take it to a permanent injunction, it follows that they must also be denied here, where Ohio bears no responsibility for the circumstances that led to this case becoming moot, and Ohio was prepared to take it to a permanent injunction proceeding. So therefore... And you think that the 12 years of the injunction are insufficient for any fees? Absolutely, Your Honor. Well, how long was the State of Ohio going to wait before they took it to the permanent injunction stage? Well, we would have liked to take it immediately, but we weren't responsible for the delays in this case. Planned Parenthood pursued four claims against Ohio. They had the health exception, undue burden, vagueness, and bodily integrity. After the original preliminary injunction was issued based on the health exception claim, they pursued the other three claims and lost every single one of them. There was no request for fees for those other three provisions before us. Well, rightly so. The fees cease at the time frame for the initial preliminary injunction. So that's moving into a different question. That's not whether they're prevailing parties. And they certainly are not with respect to the other three claims. They unambiguously lost those claims, and the district court was correct in noting that they had no basis to request fees for that. But that's moving towards the reasonableness of the fees when it's not even established that they are prevailing parties entitled to any fees at all. And they're not prevailing parties because what they sought, just like the plaintiff in McQueary, they sought permanent, ongoing relief. And the preliminary injunction, for no matter how long it lasted, which, judging by that, would be an arbitrary standard, they received only temporary relief. Yes, but that temporary relief was reviewed twice by this court, wasn't it? Only once, Your Honor. And affirmed. It was vacated in part. So the district court affirmed the likelihood of success, or the Sixth Circuit panel in 2006 affirmed the likelihood of success, but vacated the total injunction and limited it to only much narrower circumstances. And again, that's only a likelihood of success. Ohio was prepared to take that to permanent injunction proceedings, but was sidetracked as Planned Parenthood pursued three losing claims over the next 12 years, or more like 10 years. But the bottom line is, like the plaintiff in McQueary, all they got was a temporary injunction that was dissolved when the third party mooted this case, except in McQueary it was actually the defendant that mooted the case. And that's not all the relief that they sought. They wanted a total ban. They got less. They wanted a permanent ban. So do you have case law from other circuits, from this or other circuits, saying, well, if it's mooted by a third party, that just takes it completely out of the ballgame? That's the rule in this circuit. That's McQueary. Other circuits have awarded prevailing party status in cases where they've accepted a catalyst theory based on a preliminary injunction, but McQueary decidedly... Now, this is not a catalyst case, and we all realize that. Are there other circuits that have nevertheless awarded... When a third party moots the action. When a third party moots the action. So the closest exemplar in this case that's been cited is the North Cheyenne Tribes case, which I believe is from the Eighth Circuit, and there they denied prevailing party status. And that's slightly more complicated because in that case, one defendant, HUD, Housing and Urban Development, had been enjoined. HUD looked at the grant in that case for other reasons unrelated to the injunction, decided not to pursue it, and then the other defendants who were not parties to the injunction decided to bail on the project. So that case was mooted out by parties who were not actually enjoined, and the Eighth Circuit in North Cheyenne Tribes actually would side with us and say, no, you're not a prevailing party. You didn't get the relief. But here, the bottom line, Your Honors, and I see my time is up, where fees were denied in McQueary, where the defendant actually responded to the conduct and mooted the case, it follows that they must be denied here, where Ohio was deprived of the ability to make this case like SOLE. Thank you. Good morning, Your Honors. May I please the court? My name is Jennifer Branch, and I represent the Planned Parenthood plaintiffs and their physicians in this case. We ask that the court affirm the District Court's awarding of attorney's fees in this case because Planned Parenthood, after 12 years of litigation, was the prevailing party with regard to enjoining the enforcement of the statute as it related to the unconstitutional position that a medical abortion pill could not be used when a woman's life was in danger or whether her health was in danger. This case was filed within two months of the law being passed. Preliminary injunction hearing was held. Evidence was taken. Experts testified. And it was clear to the District Court and to this court in three appeals that it could affect, enforcement of this law could affect the health of women who could not have a surgical abortion because of basically problems with their uterus or fibroids or some genital anomaly. And because there would be harm to those women, the government would not be allowed to enforce the law as applied to them. The plaintiffs in this case of the prevailing party, we didn't win the war. I agree. We didn't have to go to war. We won the battle. And the battle was that the preliminary injunction that was issued in 04, affirmed in 06 twice, and in 2009 again by this court in the Strickland decision, said that the preliminary injunction was in full force and effect. What happened was during those 12 years until the case was mooted was that the parties were plaintiffs, Planned Parenthood and their doctors were prescribing this medication until one day the defendants said, you know, the injunction's been narrowed. And the defendants kept saying, we're going to enforce it in this situation. No, maybe we'll enforce it in this situation. And the plaintiffs said, wait, we're going to stop performing medical abortions until we get clarification from the district court. It took less than a month. The district court issued an order for the first time in 2011, narrowed the original injunction, instead of prohibiting enforcement altogether, narrowed it just to no enforcement when the medication is necessary to protect the health and life of the mother. So for five years, since 2011 through 2016, there was a narrow injunction, and for seven years we had a full injunction. That is sufficient for Planned Parenthood to be a prevailing party. Because what should the court look at? What does the district court do when it's trying to do this weighing that Hensley or the Supreme Court require? Yes, you're a prevailing party, but did you really win that much? How much did you win here, really? Well, part of the argument of your opposing counsel is that it turns on who gave you the relief. Do you think that that's a key distinction in determining who is a prevailing party, whether there was judicial relief at the end or whether third parties' actions controlled it? Does that matter? Yes and no. Yes in the sense that if the relief that we got was the state repealed the law, then Soll says we lose. Buchanan says we lose because the state's act repealed the law and it was a voluntary act. We were not prevailing parties. But no, in this sense, the state didn't repeal the law. The relief we received was from the district court and this court affirming the district court and mootness. So we have two things. The reason that this case no longer went to a full trial on the merits. When the FDA changed its ruling and said the abortion pill could be used for up to 70 days, that gave us the relief that we wanted. And what we look at to determine the relief that the plaintiffs wanted is the second amended complaint. This is the complaint we were about to go to trial on in 2016. This complaint, the only relief that we are requesting, is that the statute not be enforced when it's necessary to preserve the health and safety of the health and life of the patient. That was it. We got 100% of what we wanted when the FDA changed the rules. So I think this is much more akin to the Saturday parade or the national science case, Thomas versus National Science Foundation, where there was a preliminary injunction to not enforce the law until the voters could vote on repeal of the law. And it was the voters voting and repealing the law that mooted the need to go forward with a permanent hearing in the National Science Foundation case. That's what we are doing here. I think the Saturday parade example is also a great example. The Saturday parade came and went. No need to have a permanent hearing. In our situation, this statute, yes, it still exists today. We don't need to challenge it because the FDA has now determined that the pill can be used up to 70 days for any reason, not just for health and safety. So I think we needed both. We needed both the state not to repeal the statute and we needed judicial action. And because time mooted the need for a permanent injunction, we won everything that we needed. And in the order of dismissal that referenced the mooting, is the injunction retracted, declared void? How does that conclusion function? Yes, I think that's an excellent question. I think the state argued that the injunction was dissolved and that is not in our record. If you look at Record 206, that is the district court's order that, frankly, the parties crafted together and presented to the court. We were all in agreement with that this order was appropriate. It says that the complaint is moot and that the parties seek a voluntary dismissal and the case was dismissed without prejudice. There's no mention of the injunction. There's no discussion of whether it's moot or whether it's dissolved. It's just silent. And in addition, attached to the order is a letter to all the prosecuting attorneys. Because remember, we didn't just sue the state, the Attorney General. We sued all the 88 prosecutors, Hamilton County being the representative defendant class defendant. And in the letter to the prosecutors, it says nothing about the injunction being dissolved or being moot. It says that the FDA changed the enforcement and there's no longer a controversy between the parties and the case has been dismissed. So there was never a decision from the court that the order should be vacated, mooted, or dissolved. And because of that, in addition to the fact that the full relief was granted, the plaintiffs are prevailing parties under McQuarrie. In addition, I wanted to mention that Judge Merritt asked at the beginning how long the act had been held in abeyance. And I think the correct answer to that is seven years in full abeyance and then five years in partial abeyance for the period of the 12 years that the injunction was in effect. And to answer Judge Strach's question about why did McQuarrie remand to the district court, which I agree that the Sixth Circuit and McQuarrie easily could have made the ruling themselves if they had wanted to not see another appeal from McQuarrie, but they did because after they remanded to the district court, it came back to this court. And I think that is because this court really does want district courts to do their job, which is to look at the context. The district court in this case has been on the case the entire 12 years, now going on to our 14th year. And that judge has seen all of the action that took place. Yes, there were requests to have a trial on the vagueness claim and on the body integrity claim and on the due process claim by the plaintiffs, but the reason those didn't go to a merit hearing was because the defendants filed motions to dismiss on those and on the health and life exception claim. The defendants filed motions for summary judgment. The parties both all agreed that we should stay while the Supreme Court addressed Hellerstadt. And those delays in coming to a merits hearing isn't the fault of the plaintiffs. What is the fault of the defendants, however, is the delay in a judgment on fees. And it is not common that fees don't get decided on and get stayed or wait for a final decision on the merits. The district court has to make a decision whether to stay that. We did not ask for stay fees. We immediately filed within the time frame our request for fees after the preliminary injunction was affirmed by this court. And if we had gone forward, if the state had not asked for a stay, there would have been a decision and there would have been a judgment. It would have gone on the record. We're not going to collect on the judgment until the case is concluded, but interest could have accrued. I mean, that's what happens when you get a fee award and wait 10, 12, 14, maybe it'll be 2019 before this case is resolved or this issue is resolved all that time. So I think the delay here is for the fault of the defendants and the plaintiff should not be charged with that in any way. Isn't one of the keys to McQuarrie 1's remand that it felt there was something under the test of McQuarrie that could be considered by the court? Yes. I mean, I think that this court was expecting on remand a weighing of the factors similar to what the district court did in this case. But what the district court in the end did was say, this is not a prevailing party, not because of those factors, but because of Buchanan, frankly, the fact that the state repealed the statute. And the district court did go further a little bit with that analysis and looked at what the plaintiff wanted. He wanted to protest funerals forever, not just one funeral, like a Saturday parade. He wanted to do that every single time. And not be prohibited by the government from doing that. And the court analysis was he didn't get that relief. The relief he got was one time. He got to do that because he had a preliminary injunction. But as soon as Kentucky changed the statute and repealed that section, his relief was no longer available to him. That is a distinction that I think the district court, or an analysis that was appropriate for the district court to make. So in addition to the prevailing party argument, I would say that the issue about, which was in the brief, and maybe the state is not focused on that currently, because they said when they argued this morning that this case really turns on prevailing party. But I think the reasonableness of the amount of the fee was an argument that they made below that I just want to briefly address. And that would be that the district court had a duty. And this is now an abuse of discretion standard. So unless the district court made a clear error in factor law, the decision should be affirmed. And this court gives full discretion to district courts when it comes to this part of the fee analysis. District court did its duty. Its duty was to consider whether there should be a reduction in fees because of this amount of success in the case. And the district court had no trouble, because the district court had been presiding over this case for more than 12 years, that the success that the plaintiffs received, the injunction that we've already discussed for 12 years, was a significant success. If the case had gone to full merit hearing, that's all that the plaintiffs would have asked for, was an injunction against the enforcement of the statute. And that was achieved through the 12 years that the preliminary injunction was in place. In addition, the district court used the 10% reduction in fees that the plaintiffs voluntarily submitted. When we submitted our fee petitions, all the lawyers in their declaration stated that they exercised billing judgment before they even wrote their fee petition and asked for their hours. On top of that exercising billing judgment, we took a 10% discount and only asked for 90% of that time. In addition, the plaintiffs did not ask for any time defending the injunction in the appeal in 2019 or in the motion to dismiss that the defendants filed later with the district court. That time would be commensable. It should be paid by the state. But we chose to limit our time for fees to this very narrow window of three months from the day the statute was enacted until the effective date, where the entire complaint was drafted, the motion was drafted, the experts were found and a hearing was held, and post-trial briefs were done. That was a lot of work done in a very short order of time, and then the time for that appeal that went to this court in 2016. We haven't asked for any time after that. And given all of those reductions in time, I think that the court did its duty in looking at whether to reduce the fee and deciding that the fee should not be reduced. The state did not mention today, but in their briefing, that our 2016 rates shouldn't be used. We should be using our 2006 rates. Our response to that, frankly, is if they hadn't asked for a motion to stay, they would have gotten that, and then we would just be getting an interest if we ended up winning in the end on the judgment, on the fee petition. In addition, the time that the plaintiffs... I'm sorry, my time is up. Complete your sentence. The time... Oh, thank you, I'll just finish my sentence. The time that the amount of... the rate the plaintiffs were asking for the junior-level lawyers are still comparative to Judge Rubin's rates that we all use here in the Southern District of Ohio and with market rates, whether you look at 2006 or 2016 rates. So I believe those should also be affirmed. For that reason, we would ask that this court affirm the district court's award of fees. Thank you. Any other questions? No questions. Thank you. Okay, thank you. Thank you, Your Honor. I'd just like to briefly address a couple of factual points and a couple of legal points. Factually, when they're talking about the law was enjoined in its entirety for periods of time during this litigation, each time that was vacated by this court. So any permanent total injunction that was imposed by the district court was ultimately rolled back. Second... First time after seven years. And the second time after five more? It sort of... It was ping-pong. So the district court originally entered a full preliminary injunction that was vacated in part by this court. And then the district court entered... Vacated in part implies that it was retained in part. Yes, only in a very narrow fashion. And then it entered a full permanent injunction on vagueness grounds that was completely reversed by this court. So the only valid injunction was the narrow preliminary injunction that was in place. And only because plaintiffs continued to pursue and lose on other claims. Now the second point I would draw the court's attention to is my friend refers to the second amended complaint. Which, she is correct, it reduced the relief sought to a narrow health exception. That was filed in 2013 and we're talking about preliminary injunction proceedings in 2004. And there, the operative complaint was the first amended complaint which sought a full injunction of the law. Not a narrow health exception. They wanted total, permanent, ongoing relief. And what's important for the prevailing party question, so getting to the legal points, is that she got less than they sought. They wanted a full, ongoing injunction. They only got a temporary injunction that lasted only insofar as this case lasted. And they said, there's nothing... The injunction was never formally dissolved. But I'm not sure that the district court retains jurisdiction over an injunction where it retains no jurisdiction over the case today. So, I know of no case where a permanent injunction, or a preliminary injunction, would proceed into infinity without an actual case or controversy. I think the question is whether the court had acted to dissolve it. And the only issue here is the case was dismissed. Right. So, I think that they couldn't rely on it, that preliminary injunction today, which I think shows that there isn't one. So, finally, I'd just like to emphasize again the broad picture from McQueary, which is binding on this court. McQueary said that the only exception for fees in the preliminary injunction context is where the plaintiff's injunction gives them all that they sought. The only thing that moves the action is the court-ordered success and the passage of time. This case emphatically does not fit into that framework. Here, the preliminary injunction did not give them everything they sought. Again, looking at the First Amendment complaint, which was operative during these proceedings, they sought permanent, ongoing relief in the same way that the plaintiff in McQueary sought permanent, ongoing relief. They got only temporary relief. The fact that this case was not mooted is clear by the fact that they continued to litigate it and seek permanent, total, ongoing relief for the next 12 years. Nor did the PI itself moot the action. As McQueary said, it must account for fees. Preliminary injunction was not the thing that caused this case to go away in the same way that a plaintiff who gets a PI for a Saturday parade, there's no reason for them to come back to the court for permanent relief because when that parade is over, there's nothing more for the court to give them. There's nothing that the defendant can take away. The fact that the plaintiffs wanted more relief from the court and continued to seek it over the next 12 years shows that this is not a case like McQueary. If fees were denied in McQueary where the defendant itself was responsible for mooting the action in response to the preliminary injunction, it follows that they must be denied here, where Ohio was the one deprived of the opportunity to take this case to permanent injunction proceedings and make it like Seoul. If there are no further questions, we'd ask that the court reverse. Thank you. Thank you.